No. 25-1134

# In the United States Court of Appeals for the First Circuit

_____

JANE DOE,
*Plaintiff-Appellant*,

*v.*

CITY OF BOSTON; BOSTON POLICE DEPARTMENT; and
INDIVIDUAL OFFICERS, in their official capacities,
*Defendant-Appellees*.

_____

On Appeal from the United States District Court
for the District of Massachusetts (No. 21-CV-11062-MJJ)

_____

## PLAINTIFF-APPELLANT'S PETITION
## FOR PANEL REHEARING AND REHEARING *EN BANC*

_____

Aderson B. François
GEORGETOWN LAW CIVIL RIGHTS CLINIC
600 New Jersey Avenue, NW, Suite 352
Washington, D.C. 20001
(202) 661-6721

Dated: February 25, 2026     *Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES ........................................................iv

INTRODUCTION ........................................................................ 1

    I.  Statement of Relevant Facts....................................................1

    II. Basis for Rehearing ...............................................................1

ARGUMENT...................................................................................4

    I.  Rehearing is warranted because the panel opinion "overlooked" the party-presentation principle in deciding on grounds that were never raised nor briefed by either party. ...........................................................................4

    II. Rehearing is warranted because the panel opinion "overlooked" "cat's paw" theory of liability, which establishes retaliatory causation. ..........................................5

        A. The Supreme Court's opinion in *Staub v. Proctor Hospital* and its progeny in this Circuit recognize "cat's paw" liability in Title VII claims. ....................................................5

        B. A reasonable jury could find BPD liable for Title VII retaliation under a theory of "cat's paw" liability...................9

            1. *Doe can establish that Captain Mark Hayes weaponized retaliatory animus against her.................10*

            2. *Doe can also show that BPD's false charges against her are the proximate cause of the dissemination of Doe's disciplinary record to prospective employers. .....14*

**III. Rehearing is warranted because the panel opinion "overlooked" or "misapprehended" evidence showing that BPD treated Doe differently, thus establishing retaliatory causation.** ...............................................................**16**

A. BPD's undisputed practice was to only release disciplinary information if explicitly requested by a prospective employer and explicitly authorized by a former BPD-employee. ................................................................17

B. BPD departed from its standard practice by sending prospective employers Doe's disciplinary information without explicit request or authorization. ...........................18

**CONCLUSION** ......................................................... **20**

**CERTIFICATE OF COMPLIANCE** ................................. **21**

**CERTIFICATE OF SERVICE** ......................................... **22**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ameen v. Amphenol Printed Cirs., Inc.*,
  777 F.3d 63 (1st Cir. 2015) ....................................................3, 6, 9, 14

*Anderson v. Brennan*,
  254 F. Supp. 3d 253 (D. Mass. 2017)................................................. 16

*Ayala-Rodriguez v. Rullan*,
  511 F.3d 232 (1st Cir. 2007) ............................................................. 19

*Brandt v. Fitzpatrick*,
  957 F.3d 67 (1st Cir. 2020) ...................................................2, 6, 7, 9

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2000)............................................................. 10

*Cariglia v. Hertz Equip. Rental Corp.*,
  363 F.3d 77 (1st Cir. 2004) ............................................................ 3, 7

*Clark v. Sweeney*,
  607 U.S. 7 (2025) ......................................................................1, 2, 4

*Conway v. Electro Switch Corp.*,
  825 F.2d 593 (1st Cir. 1987) ............................................................... 7

*Cummings v. Standard Register Co.*,
  265 F.3d 56 (1st Cir. 2001) ................................................................. 7

*Freeman v. Package Machinery Co.*,
  865 F.2d 1331 (1st Cir. 1988) ......................................................... 6, 7

*Garayalde-Rijos v. Mun. of Carolina*,
  747 F.3d 15 (1st Cir. 2014) ............................................................... 16

*Greenlaw v. United States*,
  554 U.S. 237 (2008) ........................................................................ 2, 4

*Hernandez-Torres v. Intercontinental Trading, Inc.*,
  158 F.3d 43 (1st Cir. 1998) ............................................................... 10

*Hoover v. Hyatt Hotels Corp.*,
  99 F.4th 45 (1st Cir. 2024) ............................................................... 19

*iv*

*Jute v. Hamilton Sundstrand Corp.*,
  420 F.3d 166 (2d. Cir. 2005) ............................................................ 10

*Lomax v. Ortiz-Marquez*,
  140 S. Ct. 1721 (2020) .................................................................... 4

*Matthews v. Wis. Energy Corp. Inc.*,
  534 F.3d 547 (7th Cir. 2008)........................................................... 10

*Miller v. Jackson*,
  152 F.4th 258 (1st Cir. 2025)......................................................... 2, 4

*Napier v. F/V DEESIE, Inc.*,
  454 F.3d 61 (1st Cir. 2006) ............................................................ 14

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) ...................................................................... 11

*Rodriguez-Severino v. UTC Aerospace Sys.*,
  52 F.4th 448 (1st Cir. 2022) ........................................................... 10

*Russo v. N.H. Neurospine Inst., P.A.*,
  No. 21-CV-703-SM-TSM, 2025 WL 1191224 (D.N.H. Apr. 24, 2025) . 7

*Rutherford v. Am. Bank of Com.*,
  565 F.2d 1162 (10th Cir. 1977)....................................................... 10

*Staub v. Proctor Hospital*,
  562 U.S. 411 (2011) ................................................... 2, 5, 6, 7, 8, 9, 14

*Stoller v. Marsh*,
  682 F.2d 971 (D.C. Cir. 1982)......................................................... 3, 7

*Stratton v. Bentley Univ.*,
  113 F.4th 25 (1st Cir. 2024) ........................................................... 2, 5

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...................................................................... 10

*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020) ...................................................................... 2, 4

*Veilleux v. Nat'l Broad. Co.*,
  206 F.3d 92 (1st Cir.2000) ............................................................. 14

*Wallace v. SMC Pneumatics, Inc.*,
  103 F.3d 1394 (7th Cir. 1997).......................................................... 7

**Rules**

Fed. R. App. P. 40(b)(1)(A)................................................1, 2, 3, 6

Fed. R. App. P. 40(b)(2)(A)................................................2, 3, 5

Fed. R. App. P. 40(b)(2)(D) ...............................................3, 16

Fed. R. App. P. 40(d)(3)(A)................................................21

**Other Authorities**

Rest. 2d (Torts) § 435 (A.L.I. 1965) ................................14

# INTRODUCTION

## I.    Statement of Relevant Facts

Jane Doe, Plaintiff-Appellant, was a Boston police officer from 2007 through 2014. *Doe v. City of Bos.*, 165 F.4th 630 (1st Cir. 2026) [hereinafter "Panel Op."]. On September 23, 2009, she reported to BPD that a fellow officer, Michael Spence, raped her. *Id.* at 632. In response, BPD launched a campaign of harassment and retaliation against her.

Doe brought action in the District Court alleging Title VII retaliation. *Id.* The District Court entered summary judgment for Defendant-Appellees (collectively, "BPD"). *Doe v. City of Bos.*, No. 21-CV-11062, 2025 WL 81592, at *1 (D. Mass. Jan. 13, 2025) [hereinafter "Dist. Ct. Op."]. Doe appealed to a three-judge panel of this Circuit, which affirmed in full on grounds never before raised or briefed. Panel Op., at 638.

## II.    Basis for Rehearing

Doe respectfully petitions for rehearing by panel or *en banc* of this Court's January 27, 2026, decision for three reasons.

First, the panel opinion "overlooked," Fed. R. App. P. 40(b)(1)(A), the party presentation principle. *Clark v. Sweeney,* 607 U.S. 7, 9 (2025);

*Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008). Rehearing is warranted "to secure or maintain uniformity of the court's decisions." Fed. R. App. P. 40(b)(2)(A); *see Miller v. Jackson*, 152 F.4th 258, 269 (1st Cir. 2025) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)). "The parties 'frame the issues for decision,' while the court serves as 'neutral arbiter of matters the parties present.'" *Clark*, 607 U.S. at 9 (quoting *Sineneng-Smith*, 590 U.S. at 375). Here, the panel's decision rests on grounds that neither party argued or briefed at any stage of litigation, which warrants rehearing.

Second, the panel opinion "overlooked," Fed. R. App. P. 40(b)(1)(A), "cat's paw" theory of liability. *Brandt v. Fitzpatrick*, 957 F.3d 67, 79 (1st Cir. 2020); *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011). The panel opinion holds that "[i]nferring a retaliatory motive requires 'proof that the decisionmaker'" ("the individuals at BPD who handled [Doe's] prospective employer requests") "knew of [Doe's] protected conduct when he or she decided to" release Doe's disciplinary records. Panel Op., at 637–38 (quoting in part *Stratton v. Bentley Univ.*, 113 F.4th 25, 45 (1st Cir. 2024)). However,

> [w]hen a supervisor deliberately places an inaccurate, discriminatory evaluation into an employee's file, he intends

2

> to cause harm to the employee. The employer—that is, the organization as a whole—cannot escape Title VII liability simply because the final decisionmaker was not personally motivated by discrimination.

*Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 85 (1st Cir. 2004) (quoting *Stoller v. Marsh*, 682 F.2d 971, 977 (D.C. Cir. 1982)). Whether any employer, including BPD, may escape liability for a supervisor's retaliatory animus—against this Court's precedent—is of "exceptional importance." Fed. R. App. P. 40(b)(2)(D). Thus, rehearing is warranted "to secure or maintain uniformity of the court's decisions." Fed. R. App. P. 40(b)(2)(A); *see Cariglia*, 363 F.3d 77; *Ameen v. Amphenol Printed Cirs., Inc.*, 777 F.3d 63 (1st Cir. 2015).

Finally, rehearing is warranted to correct an "overlooked or misapprehended" fact. Fed. R. App. P. 40(b)(1)(A). The panel opinion concludes that "there is no evidence that BPD did not adhere to its standard procedures," so Doe cannot establish "a but-for retaliatory motive." Panel Op., at 637. This statement is contradicted by the record. *See, e.g.*, J.A. 545, *reproduced as Ex. 1*. A reasonable jury could find that BPD departed from its standard procedure and treated Doe differently, thereby establishing retaliatory motive in response to Doe's protected activities.

## ARGUMENT

I. **Rehearing is warranted because the panel opinion "overlooked" the party-presentation principle in deciding on grounds that were never raised nor briefed by either party.**

Courts are bound by the "principle of party presentation." *Sineneng-Smith*, 590 U.S. at 375; *Miller*, 152 F.4th at 269. "The parties 'frame the issues for decision,' while the court serves as 'neutral arbiter of matters the parties present.'" *Clark,* 607 U.S. at 9 (quoting *Sineneng-Smith*, 590 U.S. at 375). "To put it plainly, courts 'call balls and strikes'; they don't get a turn at bat." *Id.* at 9 (quoting *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020)). And, to be clear, this principle applies in "'both civil and criminal cases . . . on appeal.'" *Sineneng-Smith*, 590 U.S. at 375 (quoting *Greenlaw*, 554 U.S. at 243).

The panel opinion's analysis is novel to these proceedings. Neither party argued that Doe had to identify the ministerial individuals who processed her records-requests. Nor did either party argue that these individuals had to know about her protected conduct. And, neither did the District Court raise these issues at any time. Simply put, these issues were not "frame[d] . . . for decision." *Sineneng-Smith*, 590 U.S. at 375. Instead, the Panel raised these issues, *sua sponte,* for the first time

4

(throughout the history of these proceedings), at oral argument. Far from calling "balls and strikes," here, the Panel improperly stepped to the plate. This divergence from the party-presentation principle warrants rehearing to "maintain uniformity." Fed. R. App. P. 40(b)(2)(A).

## II. Rehearing is warranted because the panel opinion "overlooked" "cat's paw" theory of liability, which establishes retaliatory causation.

If the panel opinion does not impermissibly present novel issues, it conflicts with the precedent of this Circuit and the Supreme Court, which apply "cat's paw" liability. Under this theory, Doe presents a triable claim under Title VII.

### A. The Supreme Court's opinion in *Staub v. Proctor Hospital* and its progeny in this Circuit recognize "cat's paw" liability in Title VII claims.

The panel opinion holds that Doe cannot show that "a but-for retaliatory motive caused the deviation." Panel Op., at 637. "Inferring a retaliatory motive," the panel reasons, "requires 'proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action.'" *Id.* (quoting *Stratton*,

113 F.4th at 45). Here, the "decisionmaker" is the employee "at BPD who handled [Doe's] prospective employer[s'] requests."[1] *Id*. at 637–38.

But *Stratton* is not the exclusive way a plaintiff can establish causation for a Title VII retaliation claim. "[T]he inquiry into a corporation's motives need not artificially be limited to the particular officer who carried out the action." *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1342 (1st Cir. 1988). Yet, that is precisely what the panel opinion does here.

In doing so, the panel opinion "overlooked," Fed. R. App. P. 40(b)(1)(A), the established alternative to "decisionmaker" theory: "cat's paw" liability, which is "employed when one 'seeks to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'" *Ameen*, 777 F.3d at 68 (quoting *Staub*, 562 U.S. at 416); *see Brandt*, 957 F.3d at 79 (extending in Title VII). The court looks to that supervisor's "influence," because "the discriminatory motive of [that supervisor], not the autonomous judgment of the nondiscriminating decision-maker, is the real cause of the adverse

---

[1] Doe concedes that the record does not show that these decisionmakers "had any knowledge that [she] engaged in protected conduct." Panel Op., at 638.

employment action." *Cariglia*, 363 F.3d at 86 (quoting *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997)).

For decades, this Circuit has applied the theory underlying "cat's paw." *See Cariglia*, 363 F.3d at 86 (quoting *Stoller*, 682 F.2d at 977) ("When a supervisor deliberately places an inaccurate, discriminatory evaluation into an employee's file, he intends to cause harm to the employee. The employer—that is, the organization as a whole—cannot escape Title VII liability simply because the final decisionmaker was not personally motivated by discrimination."); s*ee also Freeman*, 865 F.2d at 1342; *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987); *Cummings v. Standard Register Co.*, 265 F.3d 56 (1st Cir. 2001).

Further, the Supreme Court endorsed "cat's paw" in *Staub*. The Court clarified that:

> if a supervisor performs an act motivated by [] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable.

*Staub*, 562 U.S. at 422.

Notably, this Circuit has adopted *Staub*'s "cat's paw" liability in Title VII retaliation cases. *Brandt*, 957 F.3d at 79–82. The district courts of this Circuit have followed suit. *See, e.g.*, *Russo v. N.H. Neurospine Inst.*,

*P.A.*, No. 21-CV-703-SM-TSM, 2025 WL 1191224, at *5 (D.N.H. Apr. 24, 2025).

And, from a policy standpoint, this makes sense. Since "[a]n employer's authority . . . is often allocated among multiple agents," overlooking "cat's paw" liability

> would have the improbable consequence that if an employer isolates a personnel official from an employee's supervisors, vests the decision to take adverse employment actions in that [personnel] official, and asks that official to review the employee's personnel file before taking the adverse action, then the employer will be effectively shielded from discriminatory acts . . . that were *designed* and *intended* to produce the adverse action.

*Staub*, 562 U.S. at 420. That is the case here, where a BPD personnel employee is insulated from the individuals who placed the information in Doe's file.[2]

Thus, Doe need not show "that the individuals at BPD who handled [her] prospective employer requests . . . had any knowledge that Doe had

---

[2] Traditionally, "cat's paw" liability applies when a subordinate employee influences the actions of a superior with decisionmaking authority. *See Staub*, 562 U.S. at 419–21. Here, the logic of cat's paw is consistent, but flows from a superior (Hayes) influencing a subordinate ministerial employee (BPD's human-resources staff). Given the lack of party presentation (*see* Section I), deciding "cat's paw" theory in this context is of exceptional importance and warrants rehearing.

engaged in protected conduct." *Contra* Panel Op., at 637–38. Instead, it is sufficient for her to show "[1] an employee [of BPD] perform[ed] an act motivated by animus that is intended to cause an adverse employment action, and [2] that act is a proximate cause of an adverse employment action." *Ameen*, 777 F.3d at 70 (relying on *Staub*, 562 U.S. at 422); *see Brandt*, 957 F.3d at 79–80.

> B. A reasonable jury could find BPD liable for Title VII retaliation under a theory of "cat's paw" liability.

It is uncontested that Doe engaged in protected conduct.[3] Under a "cat's paw theory" Doe may prevail on Title VII retaliation by showing that "[1] an employee [of BPD] perform[ed] an act motivated by animus that is intended to cause an adverse employment action, and [2] that act is a proximate cause of an adverse employment action." *Ameen*, 777 F.3d at 70 (relying on *Staub*, 562 U.S. at 422); *see Brandt*, 957 F.3d at 79–80. Doe made this showing.

---

[3] *E.g.*, Defs.' Mem. in Supp. Mot. S.J., ECF No. 103, at 9 n.7; Dist. Ct. Op., at *5; Panel Op., at 636 n.6.

1. Doe can establish that Captain Mark Hayes weaponized retaliatory animus against her.

The relevant adverse action here is the dissemination of Doe's discipline records. Doe need not show that the dissemination resulted in actual lost employment—because the mere dissemination of false or misleading statements to prospective employers is itself an adverse action under Title VII.[4]

Here, Captain Mark Hayes is a central BPD employee who turned his animus against Doe into unlawful retaliation, which culminated in

---

[4] *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Among the employment decisions that can constitute an adverse employment action [is] . . . dissemination of a negative employment reference"); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178–79 (2d. Cir. 2005); *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 558 (7th Cir. 2008); *Rutherford v. Am. Bank of Com.*, 565 F.2d 1162, 1164–65 (10th Cir. 1977*); see also Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998); *Rodriguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 463 (1st Cir. 2022). The injury is not the mere placing of false information into Doe's file. An Article III injury-in-fact can only occur when false information (placed *a priori* into one's file) is disseminated. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 414, 431–39 (2021) (distinguishing between the placing of false information into credit-reports, where there is no injury in-fact, and dissemination of that false information, which does).

the adverse action of dissemination within the statute of limitations.[5] In

November 2009, Hayes was Commander of the Family Justice Group,

which oversaw rape investigations, including Doe's report that BPD

Officer Michael Spence raped her. J.A. 692 (tr. 127:15–128:3). Instead of

investigating Spence, Hayes targeted Doe: he wrote an unnecessary

report attacking Doe's character. J.A. 564–70. This was not prompted by

any supervisor.

Hayes's report repeatedly called Doe "bizarre," "untruthful," and

"crazy." *Id*. at 565–66. He documented Doe as "bizarre" for reporting

Officer Downey in 2008, and "bizarre" for attending the retirement party

of a male superior, and "bizarre" for entering the BPD firearms range to

practice shooting. *Id*. He commented that "[Doe] is not far behind [her

---

[5] Thus, Doe need only show that the dissemination of the false
information, placed earlier in her employment record, occurred within
the relevant time-period. J.A. 545, indicating a dissemination of the false-
information in Doe's BPD record no earlier than October 23, 2018, falls
within the applicable statute of limitations, s*ee, e.g.*, Dist. Ct. Op., at *1,
*3 (limiting relief to "acts taken after February 2, 2017"). Here, Hayes's
account serves as "background evidence" of his animus "in support of
[Doe's] timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,
113 (2002).

11

crazy husband]" and called her letter to the prosecutor's office, regarding the rape-case against Spence, "bizarre" and "untruthful." *Id*.

Rather than investigating Doe's rapist, Hayes "strongly recommend[ed]" an "in-depth and thorough investigation into [her] conduct." *Id*. And, before that investigation even began, Hayes concluded: "the Department will more than meet it's [sic] burden of proof." *Id*.

This was not the first time Doe had reported sexual discrimination to Hayes—who responded with skepticism. In September 2008, during Doe's initial officer training, Officer Paul Downey made lewd comments to Doe.[6] She later organized signatures from 16 other female officers reporting his conduct to Hayes.[7] J.A. 564. Unprompted, Hayes discussed Doe's 2008 actions in his 2009 report attacking her character. Doe "*admits*," wrote Hayes, "that she penned this [report] and that she organized other female officers to sign it." *Id*. (emphasis added). Here, Hayes's choice of words—"admits"—reflects his animus for Doe. Hayes

_____

[6] *See* J.A. 30:

> She was told that to work as a female police officer, she must be either a bitch or a lesbian and that she had to "be careful" with her male colleagues . . . [and] to make sure that her hair and breasts did not distract male trainees.

[7] At the time of Doe's report, Hayes was Commander of Internal Affairs. J.A. 564.

suggested Doe acted illicitly despite adhering to BPD's misconduct reporting policies.

In this same report, he pondered: "why would such a young police officer . . . compose such a letter?" *Id.* Put differently, he asked: why would Doe report the conduct of a male superior—to him, commander of the division that oversaw sexual assault? These sentiments suggest his skepticism of Doe's reports, before even beginning an investigation into them.

Hayes suggested that Doe be charged with "[f]alsely accusing someone of rape." *Id.* He questioned her "psychological fitness," and whether she had a "disability based on medical/psychological issues." *Id.* For "convenience" of dissemination, he took the time to "ma[k]e three (3) extra copies" of his report, *id.*, ensuring that his unprompted and *sua sponte* "investigation into [Doe]" would be cemented into her record. J.A. 692 (e.g., tr. 125:7–10; 126:11–18; 127:9–11). And Hayes questioned whether Doe should "remain a Boston Police Officer." J.A. 566.

Hayes's rambling memorialization—investigating a female officer, who reported that she had been raped, without any other independent

cause for that investigation—amounts to flagrant animus "intended to cause an adverse employment action." *Ameen*, 777 F.3d at 70.

> 2. Doe can also show that BPD's false charges against her are the proximate cause of the *dissemination* of Doe's disciplinary record to prospective employers.

In applying "cat's paw," courts use the "traditional doctrine of proximate cause" in tort. *Staub*, 562 U.S. at 419 n.2 (relying on REST. 2d (TORTS) § 435 (A.L.I. 1965)). Accordingly, "the act or omission must be a substantial factor in bringing about harm and the injury incurred must have been a reasonably foreseeable consequence." *Napier v. F/V DEESIE, Inc.*, 454 F.3d 61, 68 (1st Cir. 2006) (relying on *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 123–24 (1st Cir.2000)); *see* REST. 2d (TORTS) § 435 (same).

Hayes's animus was a substantial factor in distributing Doe's disciplinary records to prospective employers. Hayes's memorandum was the impetus for an investigation that led to all of the disciplinary charges filed against Doe. J.A. 566. Captain Timothy Connolly, who drafted the charges against Doe, relied on Hayes's allegations of Doe's untruthfulness, following her report of Spence raping her, as the event that "led to" the charges:

14

> Q [C]an you explain your understanding of the events that led
> to the 65 charges against [Doe]?
>   . . .
> A There was an allegation of a rape that occurred. . . . Another
> one, there was [sic] allegations of untruthfulness. There's
> just a myriad of all these allegations based off of an
> allegation of rape. And during the investigation of the rape
> . . . these allegations [were] brought over to internal affairs
> to be investigated, is the best of my knowledge.

J.A. 701 (tr. 163:13–164:6). The "myriad of all these allegations," which
Connolly notes, are contained in Hayes's report. J.A. 701 (tr. 163:21–22).
Hayes's report was more than a "substantial factor" leading to Doe's
injury; it was the instigating event.

It was also reasonably foreseeable that Hayes's report would lead
to an investigation, later charges in Doe's file, and their eventual
dissemination to future employers. In fact, Hayes *intended* this result.
He drafted the report to inspire an investigation into Doe, explicitly
recommending a "thorough investigation into [her] conduct." J.A. 566.
The fact that Hayes produces extra copies of his memorandum bolsters
this point: he *intended* for key BPD officials to read his report maligning
Doe and to question her ability to "remain a Boston Police Officer." *Id.*
Not only is it foreseeable that this would lead to charges in her file and
their ultimate dissemination, but that was the likely result.

15

Hayes's retaliatory animus was the proximate cause of the adverse employment action taken against Doe, which satisfies the second prong of "cat's paw," and establishes retaliatory causation. This issue of whether an employer—including BPD—may escape liability, each time a new adverse action stems from a supervisor's retaliatory animus, is of "exceptional importance." Fed. R. App. P. 40(b)(2)(D).

## III. Rehearing is warranted because the panel opinion "overlooked" or "misapprehended" evidence showing that BPD treated Doe differently, thus establishing retaliatory causation.

Even if this Court does not apply "cat's paw" theory, the record still establishes causation through BPD's differential treatment of Doe. The panel opinion holds that "there is no evidence that BPD did not adhere to its standard procedures." Panel Op., at 637. The record contradicts this claim, and establishes differential treatment, *see* J.A. 545; which "strengthen[s] the "inference of retaliation." *Anderson v. Brennan*, 254 F. Supp. 3d 253, 258–59 (D. Mass. 2017), *aff'd*, 911 F.3d 1 (1st Cir. 2018); *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014).

16

A. BPD's undisputed practice was to only release disciplinary
information if explicitly requested by a prospective employer
and explicitly authorized by a former BPD-employee.

The record clearly establishes BPD's standard procedure in
responding to prospective employers' records-requests: only send the type
of records explicitly authorized. During his deposition, Superintendent
Robert Ciccolo—BPD's 30(b)(6) designee—testified that even "[w]ith a
release, [BPD] would release a personnel record in conformance with
whatever release [a prospective employer had] given [them]." J.A. 732 (tr.
23:14–20). Without a specific request for Internal Affairs disciplinary
records, they would not be provided:

> Q If the Boston Police Department receives a background
> check requesting only a personnel file, would . . . an
> Internal Affairs summary document . . . be included?
> . . .
> THE WITNESS: I do not believe so.

J.A. 745 (tr. 76:14–19). The District court found the same. *See* Dist. Ct.
Op., at *2.

The panel opinion cited testimony that "'when a law enforcement
agency makes an inquiry' into the background of a former employee,
'typically . . . they're only interested in the IA [disciplinary] history.'"
Panel Op., at 637. This statement does *not* contradict BPD's standard

17

practice. The fact that law enforcement agencies typically request employee disciplinary history does not mean that BPD had a standard procedure of indiscriminately sending out disciplinary records regardless of the types of records authorized for release. BPD's procedure is clear: it only sends disciplinary records to prospective employers when specifically requested, and authorized.

> B. BPD departed from its standard practice by sending prospective employers Doe's disciplinary information without explicit request or authorization.

The panel opinion states that "Doe points to no authorized requests for her employment records from her prospective employers that would be reasonably understood as excluding that portion of her employment records concerning her disciplinary information." Panel Op., at 637. This is incorrect. While Doe concedes that "[f]our of the five requests [contained in the record] authorized by Doe explicitly request disciplinary information," the panel fails to address that the remaining request does *not* "request disciplinary information." Panel Op., at 634 (referencing J.A. 544–48). Specifically, J.A. 545, only requests "employment history and

. . . reference information" from past or present employers—not disciplinary information.[8]

BPD *concedes* that it released information exceeding the J.A. 545 authorization. *See, e.g.*, J.A. 545; Defs.' Mem. in Supp. S.J., ECF No. 103, at 4 (admitting that the "information released," in response to J.A. 545, included the "disciplinary charges brought against [Doe], [and] that those charges were sustained," despite being unrequested and unauthorized for release). Thus, BPD deviated from standard procedure when releasing Doe's disciplinary record without authorization. This shows BPD's differential treatment of Doe in response to her protected activity. A reasonable jury could agree and find causation. *Contra* Panel Op., at 637.[9] Summary judgment is not appropriate.

---

[8] J.A. 545 is just "a sample of the [more than 40] requests" produced during discovery, which Doe could present at trial. *See, e.g.*, Panel Op., at 634. And, "each one differs as to its language," requiring individualized consideration. Dist. Ct. Op., at *6. To survive summary judgment, Doe need only "present definite, competent evidence sufficient to establish the elements of [her] claim." *Hoover v. Hyatt Hotels Corp.*, 99 F.4th 45, 57 (1st Cir. 2024). She did not need to present all available requests, "but [only] a projection of the evidence that would be offered at trial." *Ayala-Rodriguez v. Rullan*, 511 F.3d 232, 238 (1st Cir. 2007). J.A. 545 satisfies that projection.
[9] The District Court makes the same error. *See* Dist. Ct. Op., at *6 ("[T]he record contains no evidence that the manner in which BPD disclosed such information differed from its usual practice.").

## CONCLUSION

For the foregoing reasons, panel or *en banc* rehearing should be granted. Fed. R. App. P. 40(c), (e)–(f).

**Respectfully submitted**,
Jane Doe, Plaintiff-Appellant,
*by the undersigned counsel*:


 /s/ Aderson B. François
Aderson B. François
GEORGETOWN LAW CIVIL RIGHTS CLINIC
600 New Jersey Avenue, NW, Suite 352
Washington, D.C. 20001
(202) 661-6721

Dated: February 25, 2026    *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because this brief was produced using Microsoft Word for Mac (Version 16.106.1) which reports a word-count of 3,899 words, excluding the parts of the petition exempted by R. 32(f). This brief complies with the typeface requirements of R. 32(a)(5) and the type-style requirements of R. 32(a)(6), as required by R. 40(d)(2), because this petition has been prepared in proportionally spaced typeface using Microsoft Word for Mac (Version 16.106.1) in 14 point Century Schoolbook font.

 

 

                                      /s/ Aderson B. François

Dated: February 25, 2026              Aderson B. François

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2026, I electronically filed the foregoing rehearing petition with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.


      /s/ Aderson B. François

Dated: February 25, 2026      Aderson B. François